359 So.2d 466 (1978)
ELLIS NATIONAL BANK OF TALLAHASSEE, a National Banking Corporation, Appellant,
v.
Perry L. DAVIS and Burma L. Davis, His Wife, Appellee.
No. GG-397.
District Court of Appeal of Florida, First District.
April 28, 1978.
Rehearing Denied June 23, 1978.
*467 James C. Truett of Madigan, Parker, Gatlin, Truett, Swedmark & Skelding, Tallahassee, for appellant.
Charles J. Franson of Bryant, Franson, Miller, Olive, Brant & Ryan, Jacksonville, for appellee.
BOYER, Judge.
Ellis National Bank of Tallahassee (Bank) who was plaintiff in the trial court, appeals a final judgment in favor of appellee Davis and his wife (Davis) which has its genesis in a suit commenced by the Bank on a promissory note from Davis to the Bank.
The note was prepared by Mr. Davis, the Vice-President of a bank located in Jacksonville, executed by him and Mrs. Davis, and forwarded to the Bank in Tallahassee in March of 1973. The note secured a loan in the sum of $75,000 and was to be paid in annual installments of $7,500 each, interest to be paid quarterly. The space provided in the note for insertion of the rate of interest was left blank and the evidence from all witnesses who testified on the point was to the effect that there was no agreement between Davis and the Bank as to the rate of interest to be charged. Interest was billed quarterly by the Bank and paid by Davis. The rate charged was initially 7 1/2 per cent per annum, then 9 3/4 per cent per annum and then finally 10%. In late 1975 the Bank decided that the stock which it held as security for the note had so decreased in value that a demand for additional security was made. Davis refused and the Bank accelerated payment on the note. The Bank sued seeking to have a sale of the security whereupon Davis answered alleging usury as an affirmative defense and counterclaiming against the Bank for damages in an amount equal to twice the amount of interest paid in accordance with Title XII, Section 86 U.S.C.A. In due course the trial court entered a pre-trial order setting forth the following issues to be determined: (1) When the plaintiff Bank made its demand for additional collateral on September 25, 1975, did it, in good faith, believe that prospective payment of the note or performance of defendant's obligations were impaired? (2) Was there an agreement between the plaintiff and the defendants as to the interest rate which would be charged upon the note which was given by the defendants to the plaintiff, and if so what was the interest rate? (3) Did the fact that the Bank calculated the interest for a period of time using a 360 day factor applied to 365 days constitute usury when the interest rate during those periods of time was 10%? (4) Do the provisions of F.S. 687.01  "In all cases where interest shall accrue without a special contract for the rate thereof, the rate shall be 6% per annum, but parties may contract for a lesser or greater rate by contract in writing" preclude submission to the jury of issue number two or was this provision waived by the conduct of the parties? The jury found for Davis as to the first issue viz: That the Bank's demand for additional collateral was *468 not in good faith and the trial judge directed a verdict in favor of Davis as to the second and fourth issues thereby determining that there was no agreement between Davis and the Bank as to the interest rate to be charged and that F.S. 687.01 required as a matter of law that the interest accrue at the rate of 6 per cent per annum. As to the third issue relating to usury the parties stipulated that the Bank calculated the interest using a 360 day factor in accordance with Rowlett's Tables while charging Davis the maximum interest rate of 10 per cent; that the Bank knew that the factor was being used and that it would produce more interest than would be produced by applying the maximum legal rate to a calendar year of 365 days; and that other banks in Florida customarily used the 360 day factor developed by use of Rowlett's Tables when the maximum 10 per cent interest rate was being charged to borrowers. After considering the stipulation and arguments the court found for Davis as to the third issue and that the Bank had collected a usurious interest rate from September 28, 1973 through June 25, 1974. The court thereupon ordered that Davis pay the principal balance on the note without paying any interest, that Davis be awarded $815.72, the difference between the amount of interest charged and collected by the Bank over and above the statutory rate of 6 per cent; that Davis be paid the sum of $11,158.32, the penalty prescribed by Title XII, Section 86, U.S.C.A. for interest paid by Davis from September 28, 1973 through June 25, 1974; and that Davis be paid the sum of $15,160.28, the penalty for the amount of interest paid by Davis from June 25, 1974 through the date of trial.
Although, because of our treatment of appellant's second point which will be hereafter discussed, it is not necessary that we address its first point, we nevertheless note that we agree with the learned trial judge that F.S. 687.01 fixes the interest rate on the subject note at 6 per cent per annum since the evidence is clear that the parties did not contract for a lesser or greater rate.
As to appellant's second point, viz: That the trial court erred in finding that the interest rate charged Davis by the Bank from September 28, 1973 to June 25, 1974 was usurious by virtue of computation at the maximum legal rate of 10 per cent on the basis of a 360 day year rather than the actual calendar year of 365 days, there appears to be a division of authority in other jurisdictions and no reported Florida case has apparently addressed the issue.
The parties agreed during oral argument before this court and stipulated before the trial court that we are not here concerned with "spreading": That the issue is whether the interest during the period that interest was being charged by the Bank at the rate of 10 per cent exceeded the maximum legal rate allowed by F.S. 687.03. As above stated the parties also stipulated that the Bank knowingly charged, during the subject period, interest at the rate of 10 per cent based upon a 360 day year and knew that such computation would produce more interest than would be produced by applying the maximum legal rate to a calendar year of 365 days. We are not, therefore, here involved with a case of inadvertance, oversight or mistake and the simplest of mathematics reveals that 10 per cent of a given sum results in a greater per diem rate if computed on a basis of a 360 day year than if computed on the basis of a 365 day year. Appellant urges that the difference is "de minimis" or not material. However we note that F.S. 687.03 affords no leeway. It provides, in material part: "It shall be usury and unlawful * * * to reserve, charge or take for any loan * * * except upon an obligation of a corporation, a rate of interest greater than 10 per cent per annum, either directly or indirectly, * * ".
In American Timber and Trading Company v. The First National Bank of Oregon, 511 F.2d 980 (1975) the United States Court of Appeals of the Ninth Circuit had occasion to consider a factually similar case involving Oregon law. Although that court carefully and specifically limited its construction to Oregon law we are of the view *469 that its rationale is applicable in Florida. We are particularly impressed with the following statements contained in that opinion:
"* * * The bank contends that the use of a 365/365 method creates difficult computations and, therefore, for reasons of convenience the banking community considers it proper to use the simpler 365/360 method. The district court noted that the legislative intent in enacting usury laws is to protect borrowers from paying excessive interest. The court felt the act should be construed with regard to its net effect upon the borrower rather than upon the bookkeeping burden, custom, or convenience of the lender. The court noted that the bank used the 365/365 method to compute interest it paid to its depositors. Moreover, the court doubted whether the practice could obtain legitimacy by long and heavy borrowing would the question ever arise. Therefore, it concluded that it could not be said that the Legislative Assembly has acquiesced in a practical construction of the law at odds with the plain meaning of its words. Again, we agree with the district court's ruling.
* * * * * *
"* * * Any claim by the banking industry that ease of calculation is justification for exacting higher interest is of dubious validity in this age of computer technology." (511 F.2d at pages 983 and 984)
Although factually dissimilar, and involving a different specific issue, our holding sub judice is, we believe, supported by the philosophy of Dixon v. Sharp, 276 So.2d 817 (Fla. 1973). We are here also in line with Attorney General Opinion 075-269 wherein the Attorney General of the State of Florida opined affirmatively to the query "Is it a violation of Chapter 687, F.S. (Interest and Usury), for a lender to calculate interest on a 360-day year, where an individual is charged the maximum rate of 10% interest?"
We accordingly affirm the trial court as to the points raised by appellant.
Davis cross assigned as error the amount of the money judgment as fixed by the trial court. We find that point to merit our attention.
F.S. 687.04 provides:
"Any person, or any agent, officer or other representative of any person, willfully violating the provisions of § 687.03 shall forfeit the entire interest so charged, or contracted to be charged or reserved, and only the actual principal sum of such usurious contract can be enforced in any court in this state, either at law or in equity; and when, said usurious interest is taken or reserved, or has been paid, then and in that event the person, who has taken or reserved, or has been paid, either directly or indirectly, such usurious interest, shall forfeit to the party from whom such usurious interest has been reserved, taken or exacted in any way, double the amount of interest so reserved, taken or exacted; * * *"
That statute, however, is here inapplicable because appellant is a national bank and is subject to Title XII, Section 86, U.S.C.A., which furnishes the exclusive remedy when a national bank is found guilty of exacting usurious interest. (See Coral Gables First National Bank v. Constructors of Florida, 119 So.2d 741 (Fla. 3d DCA 1960) and cases therein cited) That statute provides:
"The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same:"
Although appearing at first blush to be clear and unambiguous, there is great confusion among the courts which have had occasion to consider its application to a specific *470 factual situation. There is, though, one area of its construction upon which all agree, viz: The first sentence of the statute and the second sentence thereof must be read separately as furnishing separate and distinct remedies. (See Coral Gables First National Bank v. Constructors of Florida, supra; Western Union Telegraph Co. v. Mahone, 120 Va. 422, 91 S.E. 157 (1917); First National Bank of Lake Benton v. Watt, 184 U.S. 151, 22 S.Ct. 457, 46 L.Ed.2d 475 (1902), and Cronkleton v. Hall, 66 F.2d 384 (8th Cir.1933).) In considering the question of the imposition of penalties provided by the subject statute, it was stated in Mitchell v. Joplin National Bank, (1918) 204 S.W. 1125, 200 Mo. App. 243 that:
"There are two entirely different divisions of the section. The first provides for a forfeiture when usury has been knowingly contracted for and such usury entered into the note; the second provides for the recovery back of all interest paid when said interest is in part usurious."
Our own F.S. 687.04, though not applicable to a national bank, has similar wording and has been construed similarly. (See Purvis v. Frink, 61 Fla. 712, 54 So. 862 (1911); Lyle v. Winn, 45 Fla. 419, 34 So. 158 (1903) and Levin v. Fisher (Fla. 3rd DCA 1963) 150 So.2d 730)
As noted, the first sentence of the subject federal statute provides that "the taking, receiving, reserving, or charging a rate of interest greater than is allowed by [the applicable law], * * * shall be deemed a forfeiture of the entire interest which the note * * * carries with it, or which has been agreed to be paid thereon." The word "forfeiture" is prospective in tense and meaning. It has no application to that which has already been accomplished, viz: To interest already paid. The learned trial judge was therefore correct in holding that by virtue of that provision of the statute no further interest would be required to be paid on the note because, pursuant to the wording of the statute, such interest was "forfeited" because of the usurious nature of the transaction.
We turn now to a consideration of the second sentence of the statute which, as above recited, encompasses a completely separate and distinct penalty. That provision provides that in case a usurious rate of interest has actually been paid the debtor may recover back from the creditor bank "twice the amount of interest thus paid". The Supreme Court of the United States in First National Bank of Lake Benton v. Watt, supra, held that although the statute is penal in character and must be strictly construed, it must nevertheless be given a construction in keeping with its "obvious intent" and that the second sentence "subjects the creditor to pay twice the amount of the entire interest illegally exacted". Our sister court of the Third District, in Coral Gables First National Bank v. Constructors of Florida, supra, considering application of the same statute, said:
"* * * Where the interest has been paid, the person so paying it may recover back twice the amount paid. * * *" (Emphasis the Court's: 119 So.2d at page 747)
Sub judice the parties have stipulated that Davis paid interest in the sum of $23,638.93. Twice that amount is $47,277.86. It is that amount, and only that amount, that Davis is entitled to recover back from the bank. That portion of the final judgment awarding money damages is therefore hereby amended accordingly.
Lest it appear that we have overlooked the concluding sentence of the subject Federal Statute which contains a two year statute of limitations "from the time the usurious transaction occurred", we acknowledge that provision, but observe that its construction has no application sub judice for the reason that all authorities agree that such provision constitutes a statute of limitations which is, in Florida, an affirmative defense which is waived if not pleaded. It has not been raised sub judice.
Further, we are aware that Cronkleton v. Hall, supra, which was not cited by either party but was discovered by our own research, lends a construction to the subject Federal Statute different from that which *471 we have applied sub judice. However, we have found no other case construing the statute in the manner as did the Cronkleton court and that court's construction does not appear to us to be in keeping with the plain meaning of the words of the statute itself; nor does its reasoning comport with the interpretation given by our own courts to our own statute which contains a similar provision.
AFFIRMED IN PART and REVERSED IN PART.
McCORD, C.J., and MASON, ERNEST E., Associate Judge, concur.

ON PETITION FOR REHEARING DENIED
BOYER, Judge.
By petition for rehearing appellant urges that by our holding that its charge of an interest rate in excess of the maximum allowed by law constituted usury is in conflict with our own opinion in North American Mortgage Investors v. Cape San Blas Joint Venture, 357 So.2d 416 (Fla. 1st DCA 1978), which opinion was entered on June 17, 1977. Although that opinion was a one sentence per curiam affirmance, appellant cites us to the record in an attempt to establish conflict. Without here addressing the propriety of citing a "PCA" (see Department of Revenue v. Young American Builders, 358 So.2d 1096 (Fla. 1st DCA 1978)) we note that even the allegations of appellant's petition for rehearing does not demonstrate any conflict. North American Mortgage Investors v. Cape San Blas Joint Venture, supra, according to appellant's own petition for rehearing, involved an unintentional overcharge. Sub judice, on the other hand, the bank stipulated that it knowingly employed a manner of computation which it knew would produce more interest than the maximum legal rate.
Appellant also urges that we overlooked the holding in Dixon v. Sharp, 276 So.2d 817 (Fla. 1973). A reading of our opinion, however, reveals that we expressly recognized, indeed relied upon, that opinion, saying:
"Although factually dissimilar, and involving a different specific issue, our holding sub judice is, we believe, supported by the philosophy of Dixon v. Sharp, 276 So.2d 817 (Fla. 1973). * *"
Finally, appellant contends that we have "overlooked and misconstrued the plain language of the second sentence of Title 12, United States Code Annotated, Section 86." In so urging appellant takes a position for the first time in its petition for rehearing which was never urged in its original brief, at oral argument, nor in the supplemental brief which this court ordered for the specific purpose of seeking counsel's aid in the construction of that statute. We have nevertheless considered appellant's contentions and find them not to merit a revisiting of our original opinion.
The petition for rehearing is, therefore, denied.
McCORD, C.J., and MASON, ERNEST E., Associate Judge, concur.